IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JILL VERTULLO, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )   Civil Action No. 2:14-1281 |
| | ) |
| CAROLYN W. COLVIN, | )   Magistrate Judge Lisa Pupo Lenihan |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
|     **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.    Introduction**

Plaintiff Jill A. Vertullo ("Vertullo") brings this action pursuant to 42 U.S.C. § 405(g), purportedly seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") which denied her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. The matter is presently before the Court on a motion to dismiss filed by the Commissioner pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 5). For the reasons that follow, the Commissioner's motion to dismiss will be granted, and this matter will be dismissed.

**II.    Procedural History**

Vertullo first applied for DIB on March 27, 2007 ("first application"), alleging that she had become "disabled" on January 1, 1998. (ECF Nos. 11-4, at p. 1; 15-5, at p. 19). Her date of last insurance for DIB purposes was December 31, 2001. *Id.* This application alleged disability based on multiple sclerosis and resulting panic attacks and anxiety. (ECF No. 15-5, at p. 32). Vertullo's first application was denied in a determination dated May 24, 2007, (ECF Nos. 5-3, at p. 5, 15-2, at p. 35), which became binding when she failed to request reconsideration within the

stated time period, (ECF Nos. 5-3, at p. 5); 20 C.F.R. § 404.905. Over five years later, Vertullo filed a second application for DIB on October 11, 2012 ("second application"), asserting the same date of disability onset as in her first application. (ECF Nos. 5-3, at p. 5; 15-6, at p. 2). Her second application cited the "continued disabilities" of multiple sclerosis and depression. (ECF No. 15-2, at p. 29) This application was initially denied on October 27, 2012. (ECF Nos. 12, at p. 1; 15-7, at p. 4). After Vertullo filed a request for reconsideration, the initial determination was upheld on January 29, 2013. (ECF Nos. 12, at p. 1; 15-7, at p. 8). Vertullo, represented by counsel, responded by filing a written request for a hearing by an Administrative Law Judge ("ALJ") on March 11, 2013. (ECF Nos. 5-3, at p. 5; 15-7, at p. 10).

On March 27, 2014, ALJ Natalie Appetta ("ALJ Appetta") "convened a hearing for the limited purpose of allowing counsel to present legal argument on the applicability of *res judicata*." (ECF Nos. 5-3, at p. 5; 15-2, at pp. 14-23). On April 18, 2014, ALJ Appetta issued an order dismissing Vertullo's request for a hearing based on the *res judicata* effect of the 2007 determination. (ECF No. 5-3, at p. 8) Vertullo requested Appeals Council review of this decision, which was denied on July 31, 2014. (ECF No. 5-2, at p. 3). She then commenced the instant action on September 19, 2014, seeking judicial review of the Commissioner's decision. (ECF No. 2). The Commissioner filed a Motion to Dismiss[1] and supporting brief on November 24, 2014, arguing that the Court lacks subject matter jurisdiction in this case. (ECF Nos. 5, 6). After the parties each gave consent to the adjudication of this matter by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (ECF No. 8), Vertullo filed her Brief

---

[1] While the Commissioner's motion was styled as a "Motion to Dismiss," it was purportedly made "pursuant to Rule 56 of the Federal Rules of Civil Procedure." (ECF No. 5, at p. 1). Despite the potential lack of clarity given this incongruity, the United States Court of Appeals for the Third Circuit has explained that the "lack of subject matter jurisdiction should be raised and adjudicated by a motion to dismiss, not a motion for summary judgment." *Solomon v. Solomon*, 516 F.2d 1018, 1027 (3d Cir. 1975), abrogated on other grounds by *Matusow v. Trans–County Title Agency, LLC*, 545 F.3d 241, 245 N.6 (3d Cir. 2008). As such, the Court will consider the Commissioner's motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), not a motion for summary judgment under Rule 56.

in Opposition to the Commissioner's motion on January 14, 2015, (ECF No. 12). The Commissioner's motion to dismiss is now ripe for disposition and will be resolved in this memorandum opinion.

## III. <u>Standard of Review</u>

The Commissioner's motion challenges this Court's subject matter jurisdiction over this action. As federal courts are courts of limited jurisdiction, "every case begins with the presumption that the court lacks jurisdiction to hear it." *Gershenzon v. Gonzalez*, No. 2007 WL 2728535, at *1 (W.D. Pa. Sept. 17, 2007) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Therefore, to overcome a motion to dismiss under Rule 12(b)(1), which "attacks . . . the right of a plaintiff to be heard in Federal court," *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999), the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists, *see Thomson v. Gaskill*, 315 U.S. 442, 446 (1942). The standard applied by the Court in reviewing a 12(b)(1) motion depends on whether the motion presents a "facial" or a "factual" attack on the issue presented. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action,* 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

In a facial attack, which is usually made before an answer is filed or the factual allegations of the complaint are otherwise contested, the moving party is arguing that the claim, on its face, is insufficient to invoke the subject matter jurisdiction of the court. *Constitution Party of Pa. v. Aichele,* 757 F.3d 347, 358 (3d Cir. 2014). Essentially, "a facial attack contests the sufficiency of the pleadings." *Id*. (quoting *In re Schering Plough Corp.,* 678 F.3d at 243). Reviewing "a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.*, construing the alleged facts in

3

favor of the nonmoving party." *Id*. (citing *In re Schering Plough Corp.,* 678 F.3d at 243). On the other hand, a factual attack argues "that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction.." *Id.* It alleges "the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id*. (quoting *In re Schering Plough Corp.,* 678 F.3d at 243). The standard of review applicable to factual attacks "is in marked contrast" to Rule 12(b)(6), as it allows the court to "weigh and consider evidence outside the pleadings." *Id.* (citing *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)). Although not specifically stated in her motion or supporting brief, the Commissioner's challenge is a factual one, arguing that the actual circumstances here did not meet the requirements for federal court review of the Commissioner's decision contained within § 405(g), and will be considered as such.

## IV. Discussion

### A. Overview

In favor of her motion to dismiss, the Commissioner argues that the lack of a "final decision after a hearing" in this case, as is required by § 405(g), leaves this Court without subject matter jurisdiction to review it. (ECF No. 6, at pp. 1-2). Vertullo counters by first asserting that the July 31, 2014 denial of her request for review by Appeals Counsel satisfied this requirement, given the preceding March 27, 2014 hearing held by ALJ Appetta. (ECF No. 12, at p. 2). Vertullo's second argument against dismissal is that this Court has subject matter jurisdiction to adjudicate a violation of her Due Process rights that has occurred here. *Id.* As will now be discussed, neither of Vertullo's arguments is availing, and dismissal of her claim is proper.

Under the Act, review of decisions by the Commissioner is prohibited by 42 U.S.C. § 405(h), "except as herein provided." § 405(h); *Nichole Med. Equip. & Supply, Inc. v.*

*TriCenturion, Inc.*, 694 F.3d 340, 346 (3d Cir. 2012). Specifically, *judicial* review of such decisions is permitted in only the limited circumstances detailed within § 405(g). *TriCenturion, Inc.*, 694 F.3d at 346. As § 405(g) explains, a federal district court has jurisdiction to review only a "final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was a party." § 405(g). Determining whether judicial review of a particular decision of the Commissioner is available requires an understanding that "not all agency determinations are final decisions . . . such that the district court would have jurisdiction to review that decision." *Bacon v. Sullivan*, 969 F.2d 1517, 1519-20 (3d Cir. 1992).

A relevant example of an agency determination that does not meet § 405(g)'s prerequisites for federal court review is "the Commissioner's discretionary decision to decline to reopen a prior application or to deny a subsequent application on *res judicata* grounds." *Tobak v. Apfel*, 195 F.3d 183, 187 (3d Cir. 1999). As such a decision "does not require a hearing, it is not a 'final decision . . . made after a hearing' as required" by § 405(g). *Id.* (quoting *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977)). Once the Commissioner makes the decision that *res judicata* bars a pending claim, district court review, although not completely foreclosed, is limited as follows. Initially, it is undisputed that a district court has jurisdiction to determine whether *res judicata* has been properly applied by the Commissioner. *Id.* (citing *McGowen v. Harris*, 666 F.2d 60, 66 (4th Cir. 1981)). Once a court is satisfied that the doctrine was properly applied, only two exceptions allow further judicial inquiry. First, the merits of the Commissioner's decision to deny benefits may be reviewed when the administrative record shows that "an explicit or *de facto* reopening" of a prior application has occurred. *Coup v. Heckler*, 834 F.2d 313, 317 (3d Cir. 1987), abrogated on other grounds by *Gisbrecht v. Barnhart*,

5

535 U.S. 789 (2002). Second, a district court may still hear constitutional challenges to the Commissioner's decision. *Sanders*, 430 U.S. at 109.

### B. There was no "Final Decision After a Hearing" Here

The "Act does not define "final decision"; its meaning is left to the [Commissioner] to define by regulation." *Bacon*, 969 F.2d at 1520. Under those regulations, an ALJ's "dismissal of a request for a hearing is binding, unless it is vacated by an administrative law judge or the Appeals Council." 20 C.F.R. § 404.959. Prior to making such a decision, the ALJ has the discretion to hold a prehearing conference "to facilitate the hearing or the hearing decision." 20 C.F.R. § 404.961. When Appeals Council denies a subsequent request for review of an ALJ's decision to dismiss a hearing request, that decision remains binding. 20 C.F.R. § 404.981. In the matter before the Court, ALJ Appetta chose to hold a "hearing" for the limited purpose of determining whether *res judicata* applied to bar Vertullo's second application for benefits. (ECF No. 5-3, at p. 5). Finding that the doctrine applied, ALJ Appetta then dismissed Vertullo's request for a hearing. *Id.* at p. 8.

Vertullo argues that this "hearing," combined with Appeals Council's subsequent denial of her request for review, amounted to a "final decision made after a hearing" triggering federal court jurisdiction under § 405(g). (ECF No. 12, at pp. 3-4). While Vertullo is technically correct in that there was a decision which followed something referred to as a "hearing," the circumstances here are clearly not what is contemplated by § 405(g). As the United States Supreme Court has found, Congress intended "to limit judicial review to the original decision denying benefits," not to subsequent considerations of whether "to reopen final decisions and any hearing convened to determine the propriety of such action." *Sanders*, 430 U.S. at 108. Here, the proceeding held by ALJ Appetta on March 27, 2014, even if referred to as a "hearing,"

6

was convened for only the limited purpose of determining whether *res judicata* barred Vertullo's second claim, (ECF No. 5-3, at p. 5), not for substantively evaluating that claim. Any question as to whether this proceeding was a "hearing" within the meaning of § 405(g) is resolved by considering the impact of ALJ Appetta's subsequent decision. Following the proceeding in question, ALJ Appetta chose to dismiss Vertullo's request for a hearing; *i.e.*, to *not* have a hearing. *Id.* at p. 8. Clearly then, there was no hearing before a "final decision" of the Commissioner here.

Vertullo also takes issue with Appeals Council's decision to "deny" her request for review instead of "dismissing" it, (ECF No. 12, at pp. 3-4), arguing that, pursuant to the regulations, a "dismissal" of a request for Appeals Council review is not subject to further review, but a "denial" of such a request becomes a reviewable final decision. *Id.*; *see* 20 C.F.R. §§ 404.959, 404.981. The success of this argument requires that the regulations be read in a vacuum, with no consideration given to the actual decision submitted for review. Generally, a denial of a request for review by Appeals Council does render the ALJ's decision binding and enables the requestor to file an action in federal court within 60 days following notice of such action. 20 C.F.R. § 981. Here, however, the Appeals Council was only requested to review ALJ Appetta's decision to dismiss the request for a hearing. With this context, Vertullo's argument fails for two reasons. First, the Third Circuit has ruled that such "a pre-hearing dismissal by an ALJ or the Appeals Council . . . is not a final decision under § 405(g), and therefore not subject to review." *Nicosia v. Barnhart*, 160 F. App'x 186, 187 (3d Cir. 2005). Second, even if this determination by the Appeals Council could be considered a "final decision," it would be disingenuous to suggest that the denial of a request for review of a decision not to hold a hearing somehow became a final decision *after a hearing*. As it is clear that the decision here did not

trigger federal court review under § 405(g), the Court's next inquiry must be whether the doctrine of *res judicata* was properly applied by ALJ Appetta.

### C. The Application of *Res Judicata* was proper

When the prerequisites for federal court jurisdiction under § 405(g) are not met, a district court still has "jurisdiction to determine whether *res judicata* has been properly applied to bar the pending claim." *Tobak*, 195 F.3d at 187. The doctrine "may only be properly applied to preclude a subsequent claim for disability benefits where the 'same' claimant has filed a previous application based on the 'same' issues and where such prior determination has become final by virtue of administrative or judicial action." *Id.*; 20 C.F.R. § 404.957(c)(1). Here, there has clearly been a subsequent claim filed by the same claimant after a prior claim of hers became administratively final. Vertullo argues neither of these points. Instead, she asserts that disparities in the issues considered as part of each of the two applications prevents the application of *res judicata* to bar the second. (ECF No. 12, at pp. 4-5). In support of this argument, Vertullo points to "new and material evidence" which was not considered as part of the previous claim. *Id.* at p. 4. This argument is not compelling.

The Third Circuit has ruled that the application of *res judicata* to bar a subsequent claim for benefits was improper when that subsequent claim presented "new and material" evidence, which included a previously unasserted disabling condition. *Purter v. Heckler*, 771 F.2d 682, 690-91 (3d Cir. 1985). Under such circumstances, it could not be said that the same "issues" were addressed by both claims. *See Tobak*, 195 F.3d at 187. Under the "new and material" standard, "new" evidence is that which is "not merely cumulative of what is already in the record." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). "[T]he materiality [aspect of the] standard requires that there be a reasonable possibility that the new

8

evidence would have changed the outcome of the [Commissioner]'s determination." *Id.* Given this standard, the evidence Vertullo relies on to establish the existence of new "issues" in the second application is neither new nor material.

Vertullo only disputes ALJ Appetta's general conclusion that no new and material evidence has been presented insofar as she contends that a previously unavailable physician's statement and two newly alleged impairments do actually meet the necessary standard. (ECF No. 12, at p. 4). Specifically, Vertullo refers to a March 11, 2014 statement from her treating physician Raymond Nino ("Nino"), (ECF No. 12-2, at p. 3), and impairments of depression and bulimia allegedly not considered as part of her first application, (ECF No. 12, at p. 4). First, while it is true that Nino's recent statement was unavailable when Vertullo's first application was denied and that ALJ Appetta did not directly address its existence, the March 24, 2007 Notice of Disapproved Claim specifically notes that a report provided by Nino on March 2, 2007 was considered in the 2007 denial. (ECF No. 15-2, at p. 35). As such, Nino's later statement is "merely cumulative of what is already in the record," not new. *See Szubak*, 745 F.2d at 833. Second, Vertullo's present claims of depression and bulimia both fail to meet the "new and material" standard under these circumstances.

Any claim of depression is completely unsupported by the medical records made available in conjunction with either of Vertullo's claims. Only two references to depression appear throughout the medical records produced with Vertullo's second application: one noting on August 7, 2012 that a "detailed review of systems is remarkable for . . . anxiety [and] depression," (ECF No. 15-12, at p. 4), and another on September 25, 2001 reporting Vertullo's statement that she was "not depressed," but "very anxious," (ECF No. 15-13, at p. 37). Records produced for both applications are completely void of references to any symptoms or limitations

9

related to depression.  A prescription for Zoloft in mid-1997 is the single mention of any treatment of depression, and this is contained within the records produced along with Vertullo's first application.  (ECF No. 15-3, at p. 21).  Given this lack of evidentiary support for the proposition that depression was a substantial impairment during the relevant timeframe, there is little possibility that this new claim would have changed the Commissioner's decision.  Thus, it is immaterial.  *See Szubak*, 745 F.2d at 833.  Alternatively, the depression claim is not "new" to the extent that Vertullo relies on records of panic attacks to substantiate it, as she had already claimed to be impaired by anxiety based on these symptoms as part her first application.  *Id*.; (ECF No. 15-5, at p. 32).

Vertullo's claim of bulimia is also not "new."  As she correctly points out, the impairment of "bulimia do[es] not appear to have been previously adjudicated as part of her prior claim."  (ECF No. 12, at p. 4).  Instead, Vertullo's first application relied solely on "MS panic attacks and anxiety due to the MS," with no mention of bulimia.  (ECF No. 15-5, at p. 32).  The ultimate finding that she was not disabled referenced only limitations related to "multiple sclerosis, panic attacks and anxiety," (ECF No. 15-2, at p. 35), even though submitted medical evidence reflected that, at one point, "she ha[d] been throwing up for several months to loose [sic] weight," (ECF No. 15-4, at p. 46).  Regardless of any potential merit to the argument that Vertullo's bulimia should have resulted in a finding that she was disabled at the time of her first application, that determination is now final following Vertullo's failure to file a timely request for reconsideration of it.  More important to the present inquiry, she has once again failed to claim bulimia as a basis for her disability in the second application.  (ECF No. 15-2, at p. 29 (noting only MS and depression as disabling conditions)).  Further, no evidence indicative of bulimia was produced with the second application beyond that produced with the first.  Given

these facts, it cannot be said that any "new" evidence with regard to Vertullo's bulimia has been produced as part of the second application. As none of the evidence relied upon by Vertullo is new and material, the Court agrees with ALJ Appetta's holding that "[Vertullo]'s rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies" to bar her second application. (ECF No. 5-3, at p. 8).

### D. There was no "De Facto" Reopening Here

Having determined that the Court lacks jurisdiction under § 405(g) here, the inquiry must shift to the two exceptions which still may allow federal review in such cases. The Court will first consider the possibility of a *de facto* reopening. Despite a proper application of *res judicata*, "[a] reopening, and thus a waiver of any claim of administrative *res judicata*, will be found 'where the administrative process does not address an earlier decision, but instead reviews the entire record in the new proceeding and reaches a decision on the merits.'" *Coup*, 834 F.2d at 317 (quoting *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985)); *see Purter*, 771 F.2d at 693 ("Where a subsequent claim reveals evidence that would warrant a reopening of any earlier claims, and the [Commissioner] has reviewed the entire claim and has rendered a final decision on the merits after a hearing, a reviewing court is not precluded from finding that a reopening has occurred."). However, limited investigation into what could be considered the substance of a claim a will not result in a *de facto* reopening without a decision ultimately made on the merits. *See Stauffer v. Califano*, 693 F.2d 306, 308 (3d Cir. 1982) (finding that a reopening did not occur simply because the ALJ ordered the claimant to be physically examined). Given these guideposts, it is clear that no *de facto* reopening occurred here.

ALJ Appetta's opinion and the proceeding conducted in advance of it read as textbook examples of how to avoid an inadvertent *de facto* reopening. (*See* ECF Nos. 5-3, at pp. 5-8; 15-

2, at pp. 14-23). As mentioned previously, the announced purpose for the March 27, 2014 proceeding conducted by ALJ Appetta was to determine whether Vertullo's second application was barred by *res judicata*. (ECF No. 5-3, at p. 5). During that proceeding, the brief discussion focused only on the propriety of reopening the first application. (ECF No. 15-2, at pp. 14-23). After allowing five days for Vertullo to respond with arguments that there were errors on the face of the evidence with respect to the denial of her first application, *id*. at p. 22, ALJ Appetta explained that she was "not going to take any testimony [today]," *id*. at p. 23. The entirety of ALJ Appetta's subsequent opinion is dedicated to evaluating whether reopening Vertullo's prior application was proper, (ECF No. 5-3, at pp. 5-7), and whether *res judicata* barred the second application, *id*. at pp. 7-8. In coming to the conclusion that reopening was not justified under these circumstances, ALJ Appetta carefully pointed out that her inquiry could not go so far as to address the actual merits of Vertullo's claim. *Id.* at p. 7. Her discussion of the evidence was limited to a comparison between newly presented evidence and the evidence presented with Vertullo's first application. *Id.* After this discussion, ALJ Appetta concluded that "the claimant's rights on the same facts and on the same issues are involved and the doctrine of *res judicata* applies." *Id.* at p. 8. As ALJ Appetta was careful to focus her entire opinion on Vertullo's first claim and its effects on a potential second claim, and avoided addressing the merits of those claims, no *de facto* reopening occurred.

### E. No "Colorable" Constitutional Claim has Been Asserted

The presence of constitutional questions within Vertullo's complaint is the remaining exception to § 405(g)'s jurisdictional limitation that must be considered. "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Sanders*, 430 U.S.

99, 109. As such, despite any lack of jurisdiction under § 405(g), a claimant can still "establish subject matter jurisdiction by raising a colorable constitutional claim that is collateral to the substantive claim of entitlement." *Nicosia v. Barnhart*, 160 F. App'x 186, 188 (3d Cir. 2005). The Third Circuit has, however, limited this potentially far-reaching exception by explaining that "the constitutional questions contemplated by *Sanders* deal with incompetency and lack of counsel." *Stauffer*, 693 F.2d at 307. Further, to be "colorable," a claim must amount to more than a "mere allegation of a due process violation." *Banks v. Chater*, 949 F. Supp. 264, 266 (D.N.J. 1996). "A constitutional claim is not 'colorable' if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'" *Id.* (quoting *Boettcher v. Secretary of HHS*, 759 F.2d 719, 722 (9th Cir. 1985)).

It is clear that Vertullo has failed to raise a colorable constitutional claim here. Vertullo references a potential constitutional claim only twice throughout her brief in opposition to the motion to dismiss. (ECF No. 12). This discussion consists entirely of a suggestion that the Court has "separate federal question jurisdiction under the Due Process Clause of the Fifth Amendment and 28 U.S.C. § 1331," *id.* at p. 2, and an assertion that "Plaintiff's due process rights [were] violated," *id.* at p. 8. Between these two points, there is neither argument as to what this alleged due process violation actually consisted of, nor discussion of case law which might support the finding of such a violation. *See id.* at pp. 1-8. This "mere allegation" is insufficient to raise a colorable constitutional claim or establish the federal court jurisdiction which accompanies one. *Banks*, 949 F. Supp. at 266.

The Court finds that the Commissioner's application of the doctrine of *res judicata* was proper, and that neither § 405(g) nor its exceptions permit federal review. As such, this Court

99, 109. As such, despite any lack of jurisdiction under § 405(g), a claimant can still "establish subject matter jurisdiction by raising a colorable constitutional claim that is collateral to the substantive claim of entitlement." *Nicosia v. Barnhart*, 160 F. App'x 186, 188 (3d Cir. 2005). The Third Circuit has, however, limited this potentially far-reaching exception by explaining that "the constitutional questions contemplated by *Sanders* deal with incompetency and lack of counsel." *Stauffer*, 693 F.2d at 307. Further, to be "colorable," a claim must amount to more than a "mere allegation of a due process violation." *Banks v. Chater*, 949 F. Supp. 264, 266 (D.N.J. 1996). "A constitutional claim is not 'colorable' if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'" *Id.* (quoting *Boettcher v. Secretary of HHS*, 759 F.2d 719, 722 (9th Cir. 1985)).

It is clear that Vertullo has failed to raise a colorable constitutional claim here. Vertullo references a potential constitutional claim only twice throughout her brief in opposition to the motion to dismiss. (ECF No. 12). This discussion consists entirely of a suggestion that the Court has "separate federal question jurisdiction under the Due Process Clause of the Fifth Amendment and 28 U.S.C. § 1331," *id.* at p. 2, and an assertion that "Plaintiff's due process rights [were] violated," *id.* at p. 8. Between these two points, there is neither argument as to what this alleged due process violation actually consisted of, nor discussion of case law which might support the finding of such a violation. *See id.* at pp. 1-8. This "mere allegation" is insufficient to raise a colorable constitutional claim or establish the federal court jurisdiction which accompanies one. *Banks*, 949 F. Supp. at 266.

The Court finds that the Commissioner's application of the doctrine of *res judicata* was proper, and that neither § 405(g) nor its exceptions permit federal review. As such, this Court

99, 109. As such, despite any lack of jurisdiction under § 405(g), a claimant can still "establish subject matter jurisdiction by raising a colorable constitutional claim that is collateral to the substantive claim of entitlement." *Nicosia v. Barnhart*, 160 F. App'x 186, 188 (3d Cir. 2005). The Third Circuit has, however, limited this potentially far-reaching exception by explaining that "the constitutional questions contemplated by *Sanders* deal with incompetency and lack of counsel." *Stauffer*, 693 F.2d at 307. Further, to be "colorable," a claim must amount to more than a "mere allegation of a due process violation." *Banks v. Chater*, 949 F. Supp. 264, 266 (D.N.J. 1996). "A constitutional claim is not 'colorable' if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial or frivolous.'" *Id.* (quoting *Boettcher v. Secretary of HHS*, 759 F.2d 719, 722 (9th Cir. 1985)).

It is clear that Vertullo has failed to raise a colorable constitutional claim here. Vertullo references a potential constitutional claim only twice throughout her brief in opposition to the motion to dismiss. (ECF No. 12). This discussion consists entirely of a suggestion that the Court has "separate federal question jurisdiction under the Due Process Clause of the Fifth Amendment and 28 U.S.C. § 1331," *id.* at p. 2, and an assertion that "Plaintiff's due process rights [were] violated," *id.* at p. 8. Between these two points, there is neither argument as to what this alleged due process violation actually consisted of, nor discussion of case law which might support the finding of such a violation. *See id.* at pp. 1-8. This "mere allegation" is insufficient to raise a colorable constitutional claim or establish the federal court jurisdiction which accompanies one. *Banks*, 949 F. Supp. at 266.

The Court finds that the Commissioner's application of the doctrine of *res judicata* was proper, and that neither § 405(g) nor its exceptions permit federal review. As such, this Court

lacks subject matter jurisdiction in this matter. The Commissioner's motion to dismiss must be granted.

## V. Conclusion

For the foregoing reasons, the Commissioner's motion to dismiss (ECF No. 5) will be granted, and this case will be dismissed.

Dated: February 27, 2015

s/Lisa Pupo Lenihan
LISA PUPO LENIHAN
U.S. Magistrate Judge

cc: All Counsel of Record